IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

STEPHEN L. McFARLAND        :
                            :
v.                          :   CIVIL NO. L-99-3418
                            :
TOWN OF BRUNSWICK POLICE DEPT., :
  et al.                    :

## ORDER

Now pending are the following motions, which are decided as follows:

- Town of Cheverly's Motion for Protective Order - GRANTED
- Town of Cheverly's Motion to Quash Subpoena - GRANTED
- Dennis Wilson's Motion to Quash and for Protective Order - GRANTED
- Defendants' Motion to Strike Designation of Expert Witness - GRANTED

Plaintiff, Stephen McFarland alleges that Town of Brunswick police officers Dennis Wilson and Michael Figgins beat McFarland when they arrested him after responding to a 911 domestic violence call placed by McFarland's girlfriend. In an earlier order I dismissed the complaint against the Town of Brunswick and the Town of Brunswick Police Department.[1] Accordingly, there are no "failure to train" or "negligent hiring" claims in the case, which now centers around

---

[1] Plaintiff did not oppose the Motion to Dismiss.

McFarland's allegations of excessive force.

McFarland has issued document subpoenas to two of officer Wilson's former employers, the Town of Cheverly Police Department and the University of Maryland Campus Police. McFarland's attorneys wish to see "..Wilson's qualifications and training for police work, employment history as a police officer, whether Wilson was suspended and/or disciplined, and any information concerning an unreasonable use of police force in the past." Plaintiff's Opposition to Motion for Protective Order and/or Motion to Quash pp. 2-3.

In my view these documents are not relevant. In a negligent hiring or failure to train case, Wilson's personnel files might be discoverable under FRCP 26. The instant case, however, concerns a discrete arrest on November 15, 1998. The jury will decide whether officers Wilson and Figgins used excessive force when arresting McFarland. The jury will determine this issue from the perspective of hypothetical "reasonable" police officers confronted with the same circumstances as confronted Wilson and Figgins. Whether other persons have filed brutality claims against Wilson is, therefore, of no moment. Additionally, if McFarland were to offer at trial evidence of other complaints, Wilson would be

2

entitled to call witnesses to show that the complaints lacked merit. Such evidence would be time consuming and confusing.

Also, McFarland cannot proffer that Wilson has ever been censured for excessive force or even that other complaints have been filed against the officer. Instead, plaintiff wishes to examine the personnel files to see if he can turn up any excessive force complaints. Thus, plaintiff's request is purely exploratory.

I will, however, require Wilson to state whether he has ever been disciplined for use of excessive force. Mr. Karp shall, by February 6, 2001, submit a supplemental answer to interrogatory stating whether officer Wilson has ever been disciplined for or found civilly or criminally liable for the use of excessive force while making an arrest. If so, then Mr. Karp will provide the specifics. Without deciding whether they would be admissible, I would permit McFarland to obtain the relevant records from Wilson's prior employers.

I also grant defendants' Motion to Strike Designation of Expert Witness. The scheduling order required the plaintiff to designate any expert witness and provide a Rule 26 report by September 5, 2000. On September 1st, plaintiff sent defense counsel a one paragraph notice stating that Dr. Charles A.

Cantone, a psychiatrist, would testify about "...[p]laintiff's psychological injuries and relationship to the incident." Although the notice promised that plaintiff would provide Dr. Cantone's expert report by September 7, 2000, the report was not, in fact, provided until November 8th. Under the Scheduling Order, discovery ended on November 20th, leaving no time for defendants to study the report, take Dr. Cantone's deposition, counter-designate an expert, and submit that expert to plaintiff for a deposition. Accordingly, plaintiff designated Dr. Cantone too late.

There is also an independent ground for excluding Dr. Cantone's evidence. Psychiatric testimony in tort and discrimination cases increases the cost and complexity of litigation. When one side retains an expert the opposition is usually forced to follow suit. Moreover, psychiatric testimony is usually unnecessary; juries are fully capable of determining damages in tort cases based upon traditional testimony concerning the physical injuries and emotional sufferings of a plaintiff.

Also, psychiatric testimony, while offered on damages, often infringes the subject of liability. In formulating his diagnosis, the psychiatrist will inevitably have taken into

consideration (i) his patient's description of the traumatic event, and (ii) the doctor's assessment of his patient's credibility and reliability.[2] There is a danger that a trial will devolve into conflicting expert testimony as to whether the plaintiff is telling the truth or not. Such a determination is for the jury to make.[3]

This does not mean that psychiatric testimony is never admissible. It should be admitted only in the exceptional case, however, and this is not one. Dr. Cantone opines that Mr. McFarland is experiencing a significant amount of "psychological trauma," and that "Post Traumatic Stress Disorder is also suggested." Dr. Cantone cannot say with any degree of certainty, however, how much of McFarland's problems were caused by the 1998 altercation with the police and how much were caused by other factors such as "major" substance

---

[2] For example, Dr. Cantone's report states that the police caught McFarland, who was attempting to flee, and beat him on three occasions, including beating him on the head and throwing him against a car. The doctor states that McFarland's memory of the incident is detailed and clear.

[3] Psychiatric testimony is often offered by defendants as well as plaintiffs. For example, in a sexual harassment case the defendant may seek a psychiatric examination of the plaintiff to prove that she is delusional or prone to misinterpret normal social interactions as harassment.

abuse, a recently broken and painful knee, other incidents involving the police (McFarland has been arrested more than twenty five times and has spent more than fifteen years in jail), a significant head trauma in 1986, depression over McFarland's present incarceration (on unrelated grounds), and "an anti-social personality with paranoid ideations...."[4]

I have not had the benefit of hearing Dr. Cantone's testimony. From my reading of the report, however, I conclude that the jury would find his report (concerning a complex personality with many problems) to be confusing, ambiguous and inconclusive. Accordingly, I would exclude the testimony under FRE 404(b) even if Dr. Cantone had been designated on time.[5]

In reviewing the docket, I note that officer Figgins filed a motion for summary judgment but that officer Wilson did not.

---

[4] According to the report, McFarland is a troubled personality who has had many encounters with the police. McFarland told Dr. Cantone that on November 15th, after the police arrived, he threatened to kill himself with a knife and fled from the officers. Despite McFarland's admitted belligerence, the police were entitled to use only reasonable force in subduing him. Whether they did or not will be decided by the jury.

[5] In making this determination I intend no disrespect to the profession of psychiatry in general or to Dr. Cantone in specific. There are cases in which psychiatric testimony is indispensable. This is not one of them, however.

Accordingly, at least the case against Wilson will go to trial. On Thursday, February 1, 2001 at 3:00pm I will hold a telephone conference to pick a trial date. I ask counsel to confer beforehand concerning dates and for one of them to place the call.

    IT IS SO ORDERED this 24TH day of January, 2001.

                                                  Benson Everett Legg
                                                  United States District Judge